UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61022-CIV-COHN/SELTZER

MIGUEL CALDERON,

    Plaintiff,

vs.

REEDEREI CLAUS-PETER OFFEN
GmbH & Co., and ABC MANNING COMPANY,

    Defendants.
_____/

ORDER ON MOTION TO COMPEL RULE 35 EXAMINATION

THIS CAUSE is before the Court on Defendant Reederei Claus-Peter Offen's Motion to Compel Independent Medical Examination of Plaintiff (DE 62) and the Court being sufficiently advised, it is hereby ORDERED that the Motion is GRANTED in part and DENIED in part as more fully set forth below.

Plaintiff brings this action under the Longshore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. § 905(b), to recover for physical injuries allegedly sustained on July 23, 2004, while working as a longshoreman aboard the M/V San Felipe, as the vessel was docked at Port Everglades. Defendant moves to compel Plaintiff to submit to a medical examination by an orthopaedic surgeon, Mark Sinnreich, M.D., with the examination to include x-rays and magnetic resonance imaging ("MRI") if necessary. Defendant also requests that the physician be permitted to question Plaintiff about his medical history and other matters necessary for him to reach a medical opinion as to the alleged injuries sustained by Plaintiff as a result of the subject incident aboard the vessel.

Additionally, Defendant seeks to videotape the examination.

Under Federal Rule of Civil Procedure 35, for good cause shown, a court may require a party to submit to an examination by a suitably licensed or certified examiner when the physical or mental health of that party is in controversy.  The Supreme Court has stated that "[a] plaintiff in a negligence action who asserts mental or physical injury, places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." Schlagenhauf v. Holder, 379 U.S. 104, 119 (1964).  Here, Plaintiff has alleged that Defendants' negligence caused him to sustain "serious personal injuries," and he seeks damages for those injuries.  Revised First Amended Complaint, ¶¶ 12, 17, 18 (DE 57). The Court, therefore, finds that Plaintiff's physical health is in controversy and good cause exists for an independent medical examination ("IME").  Indeed, the information sought from the IME is central to the defense of Plaintiff's damages claim.

Plaintiff "does not oppose Defendant's ultimately conducting [an] orthopaedic medical examination of Plaintiff with an orthopaedist of Defendant's choosing." Response at 1 (DE 69).  Rather, he "opposes the largely *open-ended manner* in which Defendant seeks for it to be conducted. . . ."  Plaintiff's Response at 1 (DE 69) (emphasis in original). Plaintiff, therefore, requests that if the Court were to permit the examination, it impose the following conditions:

>    (1)   Defendant must specify the time, length, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.
>
>    (2)   [The IME] should . . . be at Defendant's expense,

2

      including the translator and its own videographer.[1]

      (3)    [The IME] should be limited to 45 minutes, including all diagnostic studies.

      (4)    A patient history should not be allowed during the IME. The alternative of a questionnaire should be utilized . . . If a patient history is allowed during the IME, on the other hand, then it should be limited to no more than15 of the 45 minutes.

      (5)    The IME should be limited to orthopaedic examination.

      (6)    A Spanish translator of Plaintiff's choosing should be utilized.

      (7)    Each side should be allowed to have one attorney present.

      (8)    Plaintiff's counsel should be permitted to videotape the IME as well.

      (9)    No painful or invasive testing or procedures should be allowed.

Response at 12 (DE 69). Rule 35 does not address whether conditions may be placed on an IME. However, "[t]o satisfy the purposes of Rule 35(a), the court may in its discretion enter appropriate protective orders pursuant to Fed. R. Civ. P. 26(c)." See Hertenstein v. Kimberly Home Health Care, Inc., 189 F.R.D. 620, 623 (D. Kan. 1999). The party seeking such conditions bears the burden of demonstrating good cause within the meaning of Rule 26(c). Id.; see also Bethel v. Dixie Homecrafters, Inc., 192 F.R.D. 320, 324 (N.D. Ga. 2000) ("It is the burden of the party seeking the special conditions to establish their existence.").

---

[1] It does not appear that Defendant objects to bearing the expense of the examination.

### Sufficiency of Request for Examination

Rule 35 requires that a court ordering a physical or mental examination "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B). Although Plaintiff has agreed to an IME, he argues that Defendant's "open-ended" request is "fatally flawed by vagueness." Response at 8 (DE 69). Plaintiff specifically objects to Defendant's failing to specify the parts of Plaintiff's anatomy that will be examined. According to Plaintiff, "[i]t is simply not known whether Defendant needlessly intends to examine these unquestionably damaged body parts [hand, wrist, arm, and shoulder] – or bones, tendons, ligaments, and/or muscles elsewhere." Response at 10 (DE 69).

After Plaintiff's counsel and Defendant's counsel had tentatively agreed to a date for the examination by Dr. Sinnreich, Defendant's counsel sent Plaintiff's counsel a letter, which states in pertinent part:

> This is to confirm that we have scheduled your client Mr. Calderon to undergo a videotaped IME with orthopaedic surgeon Dr. Mark J. Sinnreich, M.D. We have enclosed Dr. Sinnreich's CV for your review.
>
> The examination has been scheduled for Wednesday, March 25, 2009, at 2:00 p.m. in the office of Dr. Sinnreich at 4701 Meridian Avenue, Suite 603, Miami Beach, Florida.
>
> For your information, the examination will consist of, including but not limited to, Dr. Sinnreich interviewing Mr. Calderon regarding his complaints and the history of his alleged accident and injury, as well as his medical, surgical and familial history. Thereafter, Dr. Sinnreich will conduct a physical examination of the Plaintiff, which includes, if necessary, radiologic studies (x-rays) of the extremities and areas of the body involved.

Response at 4 (DE 69) (quoting March 9, 2009 letter).

Some courts have denied a request for a court-ordered Rule 35 examination solely on the basis that the request failed to provide sufficient details of the proposed examination. See, e.g., Woods v. Century I, L.C., No. 92-2092-JWL, 1993 WL 33339, at *1 (D. Kan. Jan. 11, 1993) (denying Rule 35 examination for movant's failure to provide any details other than identity of the examiner).  "The failure to provide all particulars about the examination, however, does not necessitate denial of a motion for examination." See Hertenstein, 189 F.R.D. at 623.  A court may grant a request for examination subject to it issuing a further order specifying the details. Id.

Here, the Court finds Defendant has provided sufficient details to grant the request for an IME.  The request gives the following particulars:  (1) the identity of the examining physician; (2) the identity of his medical specialty (orthopaedic surgeon); (3) the date and time of the examination (which will now need to be changed); (4) the location of the examination; (4) the areas into which the physician would inquire (Plaintiff's complaints, medical, surgical and family history and history of the accident and injury); (5) the conducting of a physical examination; and (4) the conducting of radiologic studies of the extremities and areas of the body involved, if necessary.[2]  The Court, however, does find that the request fails to sufficiently delineate the scope of the examination, as Plaintiff contends.  Therefore, the Court will limit the scope to "a full and complete orthopaedic examination of all areas that Plaintiff claims to have injured in the accident alleged in the

---

[2] Subsequently, Defendant's counsel clarified that no invasive testing would be performed during the examination.

Complaint."

Because the parties previously agreed-to date for the examination did not occur and Defendant's motion does not suggest a new specific date and time, the Court cannot now fashion an order fully complying with Rule 35(a)(2)(B). The Court, therefore, will require the parties to agree on a mutually convenient date and time for the examination, and Defendant shall then submit a proposed order for the Court's consideration, which sets forth the particulars required by the Rule, including the scope of the examination.

The Court will now address the conditions of examination that Plaintiff has requested.

### Third Party Observers

Plaintiff first requests that his attorney be present at the deposition. Rule 35 is silent as to who may attend an examination. A court, however, "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). See Bethel, 192 F.R.D. at 323 (noting that Rule 35, like other discovery devices is subject to the provisions of Rule 26(c); declining to permit attorney to be present at Rule 35 examination). The party seeking the presence of a third party at a Rule 35 examination carries the burden of convincing the court that such presence is necessary. Id.; Tirado v. Erosa, 158 F.R.D. 294, 299 (S.D.N.Y. 1994). "The appropriate inquiry is whether special circumstances are present which call for a protective order tailored to the specific problems presented." Id.

Although there is authority for permitting a third party to be present at a Rule 35 examination, the majority of federal courts have held that third parties should be excluded

absent special circumstances. See, e.g., Hertenstein, 189 F.R.D. at 628-34 (D. Kan. 1999); McKitis v. Defazio, 187 F.R.D. 225, 228 (D. Md. 1999); Ali v. Wang Laboratories, Inc., 162 F.R.D. 165, 168 (M.D. Fla. 1995); Tomlin v. Holecek, 150 F.R.D. 628, 631 (D. Minn. 1993); Wheat v. Biesecker, 125 F.R.D. 479, 480 (N.D. Ind. 1989); Brandenberg v. El Al Israel Airlines, 79 F.R.D. 543, 546 (S.D.N.Y. 1978). The court in Romano v. II Morro, Inc., 173 F.R.D. 271 (D. Or. 1997), articulated the reasons for prohibiting third parties at an examination:

> [A]n observer, a court reporter, or recording device would constitute a distraction during the examination and work to diminish the accuracy of the process. [An observer could] potentially distract the examining [physician] and examinee thereby compromising the results of the examination. Moreover, the presence of the observer interjects an adversarial, partisan atmosphere into what should be otherwise a wholly objective inquiry. . . . The Court finds that the presence of the observer would lend a degree of artificiality to the examination that would be inconsistent with the applicable professional standard.

Id. at 273-74 (quoting Shirsat v. Mutual Pharm. Co., 169 F.R.D. 68, 70-71 (E.D. Pa. 1996)). Other courts have noted the ethical considerations that may arise when an attorney is present at a Rule 35 examination. The court in Wheat, 125 F.R.D. at 480, explained: "Disciplinary Rule 5-102 of the Code of Professional Responsibility prohibits an attorney from acting as both a lawyer and a witness during a trial. Therefore, by attending the medical examination, the attorney may be placing himself in the position of having to choose between participating in the trial as the litigator or as a witness." See also Hertenstein, 189 F.R.D. at 629 ("[T]he presence of a lawyer creates a potential ethical problem since he becomes a possible witness and might therefore have to withdraw as trial

7

counsel"); Di Bari v. Incaica Cia Armadora, S.A., 126 F.R.D. 12, 14 (E.D.N.Y. 1989) ("courts are wary of the ethical problems posed under Canon 5, DR5-102, when an attorney for a party makes himself a potential witness in the action"); McDaniel v. Toledo, Peoria and Western R.R. Co., 97 F.R.D. 525, 526 (D. Ill. 1983) (noting that attorney's presence at Rule 35 examination "creates the possibility that he may have to impeach the examining physician through his own testimony, in violation of Canon 5, DR 5-102").

This Court agrees with the reasoning of the Romano and Wheat courts and the majority of other federal courts that hold that third parties should not be permitted to attend a Rule 35 examination absent special circumstances. Here, Plaintiff argues that special circumstances do exist to justify the presence of his attorney. In support, Plaintiff states that in September 2008, a neurologist found that Plaintiff has "signs of severe paranoia and I suspect that he is schizophrenic." Response at 2. And Plaintiff states that in March 2009, the same neurologist found that he has "apparent paranoid schizophrenia or a paranoid disorder." Id. The neurologist purportedly stated that Plaintiff "is convinced people are watching him all the time and there are tiny cameras which are following his every move, as well as tiny microphones which are recording every conversation he has. As a consequence, he is very guarded in what he says and very concerned that people are trying to hurt him." Id. Because of these alleged conditions, Plaintiff argues that his attorney, whom he trusts, must be present at the orthopaedic examination "to reassure him that he is safe and that he will not be harmed." Id.

The Court has given Plaintiff's request that his attorney be present at the examination serious consideration. However, the Court does not find that Plaintiff has met

his burden of showing good cause within the meaning of Rule 26(c).  Plaintiff has not submitted an affidavit from any physician attesting that Plaintiff should not or would not be able to undergo an orthopaedic examination unattended.  Moreover, Plaintiff has failed to proffer the neurologist's qualifications for making such a psychological diagnosis.  The neurologist did state that Plaintiff "has been followed by Psychiatry," yet Plaintiff has not submitted any report from a psychiatrist or psychologist.  The Court cannot find that these unsupported statements concerning his alleged psychological condition warrant the intrusion of Plaintiff's attorney and the concomitant distraction into what should be a neutral, non-adversarial proceeding.  Standing alone, these unsupported statements do not outweigh the factors militating against a third-party presence at the examination.  See Hertenstein, 189 F.R.D. at 628-634 (denying request to permit attendance of attorney, family member, or friend at a Rule 35 mental examination to "comfort" the plaintiff, even though the plaintiff had a severe major depressive disorder and suicidal ideations and her treating physician had averred that a familiar face would reduce the stress of the examination).

   Plaintiff, a Spanish speaker, additionally argues that a certified Spanish interpreter must be present during the examination.  Because of Plaintiff's alleged paranoid tendencies, he requests that his counsel be permitted to designate an interpreter with whom Plaintiff is already familiar, such as the one he has used in answering interrogatories and in other interviews.  And because Defendant has requested the examination, Plaintiff contends that it should bear the expense of the interpreter.  Defendant responds that an interpreter is unnecessary.  According to Defendant, Plaintiff's fluency in English was

9

made clear during his deposition testimony when he engaged in a technical discussion on turnbuckles. Moreover, during the deposition, Plaintiff testified that he took his instructions from his co-workers in English. Nonetheless, Defendant has no objection to providing an interpreter. The Court, therefore, will permit a certified Spanish interpreter to attend the examination, if Plaintiff believes an interpreter is necessary. See Ayat v. Societe Air France, No. C 06-1574 JSW (JL), 2007 WL 1120358, at *7 (N.D. Cal. Apr. 16, 2007) (denying attendance of attorney or tape recorder at Rule 35 examination, but permitting interpreter with the defendant's agreement). However, because Defendant will be responsible for the cost of such service, Defendant's counsel may choose the interpreter, unless the parties agree otherwise.

## Limiting Physician's Questions

Plaintiff next requests that the Court preclude the examining physician from inquiring into his medical history and the circumstances surrounding the accident. Plaintiff argues that by use of these inquiries Defendant is attempting to turn the physical examination into a second deposition. Plaintiff suggests that in lieu of such inquiry, Plaintiff be permitted to answer a written patient history questionnaire in advance of the examination, which would then be given to the physician.

Courts have often declined to preclude the examining physician from questioning a plaintiff during a Rule 35 examination. This Court finds the discussion in Romano persuasive:

> To restrict a physician from questioning a patient during a physical examination unduly restricts the physician's ability to obtain the information necessary to reach medical conclusions. The questioning of the plaintiffs by defense

10

> counsel during the taking of their depositions, the historical medical records, and the answers of the plaintiffs to interrogatories are no substitute for the answers to questions that a physician must pose to a patient during a physical examination. All of the questions that a medical doctor needs to ask, in particular the follow-up questions, cannot be determined in advance of the medical examination.

173 F.R.D. at 273; see also Hertenstein, 189 F.R.D. at 626 ("An examining physician under Rule 35(a) may ask the examinee such questions as are necessary to form an opinion about her condition and the cause of the alleged injury."). Plaintiff has not carried his burden of demonstrating that the examining physician will improperly conduct the examination as an advocate for Defendant, attempt to ask Plaintiff questions not pertinent to the examination, or otherwise turn the examination into a *de facto* deposition. Accordingly, the Court will not limit the examining physician's inquiries.

### Duration of Examination

Plaintiff objects that Defendant has not specified the length of the examination. He argues that under Defendant's "open-ended" notice, the examination could last all day, with the physician asking countless questions, turning the examination into a second deposition. Plaintiff, therefore, requests that the Court limit the examination to 45 minutes (including diagnostic studies), with no more than 15 minutes devoted to an inquiry into his medical history, if such is permitted. Plaintiff has not proffered sufficient reason for limiting the examination to 45 minutes, and the Court declines to do so. The Court has no reason to doubt the examining physician will conduct the examination in the time reasonably needed to assess Plaintiff's physical condition in order to render an expert medical opinion. See Morton v. Haskell Co., No. 94-976-CIV-J-20, 1995 WL 819182, at *3 (N.D.

11

Fla. Sept. 12, 1995) (declining to limit duration of examination; "[t]here is no claim that the psychologist chosen by defendant will abuse the proper purpose of the mental examination and no basis to conclude that a one hour examination will fit the circumstances of this case.").

<u>Procedures to be Performed</u>

Plaintiff requests that the Court preclude the examining physician from conducting any painful or invasive procedure. Courts often permit "routine procedures" to be performed during a Rule 35 examination. <u>Tarte v. United States</u>, 249 F.R.D. 856, 860 (S.D. Fla. 2008) (Rosenbaum, M.J.) (<u>citing</u> <u>Trenary v. Busch Entm't Corp.</u>, No. 8:05-cv-1630R-30EAJ, 206 WL 3333621, at *4 (M.D. Fla. 2006)) (ordering examinations to proceed according to "routine procedures)." Defendant has indicated that the examination may include x-rays and MRI's, if necessary. As one court in this District has stated, "[i]t is difficult to imagine how an orthopedic surgeon . . . could assess the existence and extent of any permanent damage to Plaintiff's bones without the aid of x-rays and MRI's that are reasonably necessary for [him] to assess the extent of Plaintiff's injuries." <u>Tarte</u>, 249 F.R.D. at 860. Radiologic studies, such as x-rays and MRI's, are not invasive or painful procedures. Moreover, Defendant's counsel has assured Plaintiff's counsel that the examining physician will not perform any invasive testing. Accordingly, the examining physician shall be permitted to perform the routine procedures of an orthopaedic necessary to assess Plaintiff's medical condition and render an expert opinion.

<u>Videotaping Examination</u>

As a final matter, the Court must decide whether the physical examination should

12

be videotaped.  Generally, it is the plaintiff examinee who requests that a Rule 35 examination be recorded or videotaped; here, however, it is Defendant who noticed a videotaped examination. Plaintiff objects to the videotaping and contends that videotaping is "perhaps the one thing most likely to cause anxiety on [his] part," given his alleged paranoid tendencies. Response at 3 (DE 69).  He, however, argues that if the Court were to permit videotaping, then his attorney should be permitted to be present and also tape the examination.

"Most courts analyze a request for a recording device the same way they evaluate whether to permit the presence of an attorney at a Rule 35 . . . examination." Lerer v. Ferno-Washington, Inc., No. 06-81031, 2007 WL 3513189, at *1 (S.D. Fla. Nov. 14, 2007) (Rosenbaum, M.J.) (quoting Favale v. Roman Catholic Diocese of Bridgeport, 235 F.R.D. 553, 557 (D. Conn. 2006)); see also Hertenstein, 189 F.R.D. at 628 ("Whether to allow a tape recorder or a third person at the examination of plaintiff raises only a single issue."); Holland v. United States, 182 F.R.D. 493, 495 (D.S.C 1998) (considering the presence of "a professional videographer or court reporter, or even . . . an unattended videotape machine" as variations of the same issue, i.e. the presence of a "third party");   The party seeking to record or videotape an examination bears the burden of showing good cause for the request.  Lerer, 2007 WL 3513189, at *1.

As good cause, Defendant argues that videotaping the IME will avoid discrepancies that may arise over statements made by Plaintiff during the examination in response to the examining physician's inquiries and reduce the prospective need for court intervention. But this would be true for any IME.  Yet, videotaping is not "typically necessary or proper."

13

Lerer, 2007 WL 3513189, at *1; see also Shirsat v. Mutual Pharm. Co., 169 F.R.D. 68, 70 (E.D. Pa. 1996) (finding that "an observer, court reporter, or recording device, would constitute a distraction and work to diminish the accuracy of the process"); Tirado, 158 F.R.D. at 299 (finding that "[t]he introduction of a human or mechanical presence – whether a lawyer, a stenographer, a tape recorder, or other instrumentality – changes the nature of the proceeding, much in the way that television 'coverage' of events qualitatively changes what occurs in front of the camera").  The Court does not find good cause to videotape the examination, and, accordingly, will not permit such recording by either party.

In sum, the Court finds that Plaintiff's physical condition clearly is in controversy and that good cause exists for a Rule 35 examination.  The Court further finds that Plaintiff has failed to meet his burden of demonstrating good cause or special circumstances to warrant imposing the requested conditions.

## ORDER

Based on the foregoing, it is hereby ORDERED as follows:

1. Defendant Reederei Claus-Peter Offen's Motion to Compel Independent Medical Examination of Plaintiff (DE 62) is GRANTED in part and DENIED in part.

2. Neither party shall videotape the orthopaedic examination.

3. Neither party's counsel or other third-parties shall be permitted to attend the examination, except for a certified Spanish interpreter selected by Defendant, if Plaintiff believes such interpreter is necessary.

4. The examination shall take as long as is necessary for the examining physician to assess Plaintiff's physical condition and to provide an expert medical opinion.

5. The examining physician may perform the routine procedures of an orthopaedic examination (including x-rays and MRI's) that are necessary to assess Plaintiff's physical condition and to provide an expert medical opinion.

6. Within ten days of the date of this Order, Defendant's counsel and Plaintiff's counsel shall confer and agree on a date and time for the independent medical examination, and Defendant shall submit to the Court's chambers a proposed order consistent with this Order. The proposed order shall include all the particulars required by Federal Rule of Civil Procedure 35(a)(2)(B).

DONE AND ORDERED in Fort Lauderdale, Florida, this 27th day of April 2009.

*[signature]*
BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record