UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION
Case No. 07-61022 CIV COHN

MIGUEL CALDERON,

Plaintiff,

v.

REEDEREI CLAUS-PETER OFFEN GmbH & CO. and ABC MANNING COMPANY,

Defendants.
_______________________________________/

**DEFENDANT REEDEREI CLAUS-PETER OFFEN GmbH & CO.'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT TESTIMONY AND REPORTS**

COMES NOW Defendant REEDEREI CLAUS-PETER OFFEN GmbH & CO. by and through undersigned counsel and files this its Motion to Exclude Plaintiff's Expert Testimony and Reports and in support states:

## I. INTRODUCTION

Plaintiff has submitted reports from his expert neurologist, neuropsychologist and vocational rehabilitation expert. Each of these reports and the opinions contained therein are either, in whole or in part, unreliable because they are based on the faulty assumption that the Plaintiff struck his head during his accident on July 23, 2004 on board the M/V "San Felipe". More specifically, none of Plaintiff's experts have offered any support for their conclusion that Plaintiff suffered head trauma either in the form of Plaintiff's medical records or other evidence based on scientifically valid principles. Plaintiff's experts have also failed to consider other possible explanations or causes for the alleged psychological/cognitive problems of Plaintiff. Accordingly, Defendant requests that this

Court exclude Plaintiff's expert reports which are based on the opinion that Plaintiff suffered traumatic brain injury and preclude any testimony as to the same.

Additionally, Plaintiff has submitted an expert report from his maritime expert/mechanical engineer Bryan Emond which renders opinions on the design of the hatch cover at issue and the ergonomics of performing lashing operations from atop the hatch cover as well as from the lashing platform. Emond also offers opinions regarding Plaintiff's perception of the fall risk, Defendant's knowledge of the fall risk, the Defendant's duty to warn the Plaintiff and its opportunity to do the same. First, the seaworthiness of the vessel is not at issue in this case as the Plaintiff is a longshoreman is not owed a warranty of seaworthiness. Second, Emond is not an ergonomist or human factors engineer and therefore is unqualified to render opinions on the ergonomics of lashing operations. Finally, Emond has given legal opinions on the duty owed by the Defendant and also opinions which are based upon common knowledge within the purview of the trier of fact and therefore should be excluded. Accordingly, Mr. Emond's report should be excluded and he should be precluded from testifying as to these topics.

## II. MEMORANDUM OF LAW

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under Rule 702, before admitting expert testimony, the Court must be satisfied that: (1) the witness qualifies as an expert; (2) the expert testimony is based upon sufficient facts or data; (3) the testimony is the product of reliable principles and methods; (4) the witness has applied the principles and methods reliably to the facts of the case; and (5) the opinion offered will assist the trier of fact. *See* Fed. R. Evid. 702. The burden of proof of establishing that these conditions have been met lies with the proponent of

the expert testimony. *See* In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 744, n.11 (3rd Cir. 1993), *cert denied sub nom*; GE v. Ingram, 513 U.S. 1190 (1995) (the party seeking to admit the testimony of experts must "demonstrate by a preponderance of the evidence that their opinions are reliable"); Freeman v. Package Machinery Co., 865 F.2d 1331, 1337 (1st Cir. 1988) (the burden of establishing an expert witness' qualifications lies with expert's proponent.).

The Supreme Court has held that Fed. R. Evid. 702 imposes a special obligation upon a trial judge to ensure that any and all scientific testimony is not only relevant, but reliable. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). To this end, a district court must act as a gatekeeper to exclude invalid and unreliable expert testimony. Hollander v. American Cyanamid Co., 172 F.3d 192, 202 (2nd Cir.), *cert denied*, 528 U.S. 965 (1999), citing General Electric v. Joiner, 522 U.S. 136 (1997).

In Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), the Supreme Court set forth a two-part test in connection with the District Court's gatekeeper function under Fed. R. Evid. 702: the trial judge must ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *Id.* at 597. Pertinent evidence based on scientifically valid principles will satisfy those demands. *See* General Electric v.Joiner, 522 U.S. 136 (1997). The determination of whether expert testimony should be excluded because it is unreliable rests in the firm discretion of the trial court. *Id.* at 138-39., Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996).

In Daubert, the Supreme Court set forth list of specific factors a court should consider when deciding upon the admissibility of expert testimony: 1) whether the expert's theory or technique can be, and has been tested; 2) whether the theory or technique has been subject to peer review and

publication; 3) the known or potential rate of error; and 4) whether the theory has been generally accepted. Grdinich v. Bradlees, 187 F.R.D. 77, 80 (S.D.N.Y) citing Daubert, 509 U.S. at 591-93. However, "the test of reliability is 'flexible,' and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to ultimate reliability determination." Kumho, 119 S.Ct. at 1171; Grdinich v. Bradlees, 187 F.R.D. at 81.

In assessing reliability of expert opinion under Daubert, the Third Circuit has noted that "Daubert's requirement that the expert testimony as to scientific knowledge – conclusions supported by good grounds for each step in the analysis – means that any step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible." In re: Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 745 (3rd Cir 1993).

**A.THE OPINIONS OF PLAINTIFF'S EXPERTS THAT HE SUFFERED TRAUMATIC BRAIN INJURY ARE UNRELIABLE BECAUSE THEY ARE PURELY SPECULATIVE**

As set forth above, the party seeking to admit the testimony of experts must "demonstrate by a preponderance of evidence that their opinions are reliable." Paoli, 35 F.3d at 748. In the present action, Plaintiff will not be able to meet his burden because the opinions of his experts that he suffered traumatic brain injury rely on faulty assumptions which constitute steps rendering their opinions inadmissible under Paoli.

A physician's opinion as to causation may be challenged if he did not employ an adequate differential diagnosis, a term used to describe the process of eliminating other possible diagnoses. *Id.* at 758. At the core of differential diagnosis is a requirement that experts consider alternative causes of an injury or illness. *Id.* at 759. When a physician fails to employ standard diagnostic

techniques with which to rule out alternative causes of an injury or illness, or the defendant points to some likely cause of plaintiff's injury or illness other than the defendant's actions, then that physician's opinion should be excluded under Federal Rule of Evidence 702. *Id.* at 760. The In re Paoli court explained that the plaintiff's burden of proof on admissibility of his doctor's opinion as to causation is governed by the "substantial factor" test. Under the substantial factor test, a plaintiff must prove that a defendant's actions were a cause of plaintiff's injuries before the burden shifts to the defendant to show that the injuries would have occurred even absent any action by the defendant. *Id.* The physician must be able to compare the plaintiff's symptoms and medical history with a known scientific conclusion or relationship. If a physician cannot tie his assessment of such information to known scientific conclusions, based upon research or studies, then there is no comparison for the jury to evaluate and the doctor's testimony is not helpful to the jury. *See* Porter v. Whitehall Laboratories, Inc., 9 F.F.3d 607, 614 (7th Cir. 1993); *see also* Moore v. Ashland Chem.,Inc., 151 F.3d 269, 279 (5th Cir. Tex. 1998).

An expert who bases his opinion on faulty assumptions may not testify at trial. See, e.g., Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18 (2d Cir. 1996). Where evidence is too speculative, as a matter of law Daubert and the Federal Rules of Evidence require that a district court exclude the admission of the evidence. Lithuanian Commerce Corp. v. Sara Lee Hosiery, 179 F.R.D. 450, 457 (D.N.J. 1998), citing Target Market Publishing, Inc. v. ADVO, Inc., 136 F.3d 1139, 1143 (7th Cir. 1998). To this end, admission of expert testimony based on speculative assumptions is deemed to be an abuse of discretion. Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 98-99 (3rd Cir. 1983).

To ensure that an opinion is not based on speculation, an expert must vouchsafe the reliability of the data on which he relies and explain how the cumulation of that data was consistent with standards of the expert's profession. SMS Systems Maintenance Services v. Digitial Equipment, 188 F.3d 11, 25 (1st Cir. 1999). Even where an expert's methodology is reliable, if the analysis is not based upon relevant and reliable data, the expert's opinion will be inadmissible. Johnson Electric North America, Inc. v. Mabuci Motor America Corp., 103 F.Supp.2d 268, 283 (S.D.N.Y 2000).

For example, in Mayhew v. Bell S.S. Co., 917 F.2d 961 (6th Cir. 1990), a seaman sued under the Jones Act alleging that he injured his back after slipping on ice carrying heavy lines. His treating physician was of the opinion that the plaintiff's back condition was caused by the slip and fall aboard defendant's vessel. *Id.* However, the physician failed to consider the plaintiff's long history of back problems, both prior to and subsequent to the incident in question. *Id.* The trial court granted the defendant's motion *in limine* excluding the treating physician's opinion as to causation as being speculative. *Id.* at 963; *see also* Smelser v. Norfolk Southern Ry. Co., 105 F.3d 299 (6th Cir. 1997)(Court properly excluded the opinions of a biomechanics expert as to causation because, *inter alia*, he failed to consider the plaintiff's prior back and neck injuries, he only reviewed four x-ray reports instead of the plaintiff's complete medical history, he did not discuss plaintiff's symptoms with him or plaintiff's version of how his body moved during the accident.).

Here, Plaintiff has submitted the expert reports of Dr. Jorge Herrera, Dr. Nicholas Suite and Dr. Craig Lichtblau all of which state the unsupported opinion that CALDERON suffered traumatic brain injury as a result of the accident in question. However none of these experts employ standard diagnostic techniques with which to rule out alternative causes of Plaintiff's alleged neurological or

psychological symptoms. Nor do they base their conclusions on any known scientific conclusion or relationship. Rather their opinions are based on their own subjective opinions and are therefore inadmissible. *See* Viterbo v. Dow Chem. Co., 826 F.2d 420, 424 (5th Cir. 1987); *see also* Rutigliano v. Valley Business Forms, 929 F.Supp. 779 (D.N.J. 1996) *aff'd* 118 F.3d 1577.

**JORGE HERRERA**

CALDERON has submitted an "Neuropsychological Evaluation" prepared by Jorge A. Herrera. Dr. Herrera is listed as a licensed psychologist. Herrera's report states in pertinent part:

> According to the patient, he recalls "turning in the air" immediately after falling. Mr. Calderon recalls the actual impact and he indicated that immediately afterwards he began "seeing colors". The report of this type of experience is very frequently the result of the patient having suffered a traumatic head injury with consequent dysfunction of cerebral processes. Mr. Calderon did not recall striking his head against the floor when he landed, but his report of "seeing colors" and "not being able to move" are consistent with him having done so and suffering head trauma. Furthermore, he reported that a witness to the fall has stated that he hit his head.

Herrera Report, p. 1. attached as exhibit "A".

Later in his report Herrera states, "[i]n terms of head trauma suffered by Mr. Calderon in this accident, it is likely that his head struck the floor as he landed." Herrera Report, p. 12. The only "support" that Herrera offers for his conclusion is that "[r]eports of perceptual disturbances such as 'seeing colors' are frequently associated with a disruption of the electrical activity of the occipital lobes following an impact to the head, such as Mr. Calderon sustained during the course of the accident in question." Herrera Report, p. 1. Tellingly, Herrera does not cite to a single medical record which indicates that Plaintiff suffered head trauma or that Plaintiff reported to any treating physician

that he hit his head[1]. Nor does he cite any published studies to support his opinion.[2] Rather Herrera's conclusion that CALDERON suffered head trauma is based on his own subjective opinion that it is "likely that his head struck the floor." Herrera Report p. 12. What is just as telling is that the Plaintiff testified during his deposition that he was not under the care of any psychiatrist or psychologist. (See Plaintiff dep. p. 160). Mr. Herrera does not tie his assessment that CALDERON suffered brain trauma to known scientific conclusions based upon research or studies and therefore there is no comparison for the trier of fact to evaluate. Accordingly Herrera's testimony is not helpful to the trier of fact and should be excluded. *See* Porter, *supra*, at 614.

---

[1] In fact, the only treating physician that ever noted that Plaintiff may have suffered a head injury is his expert neurologist Dr. Nicholas Suite who first examined him in September of 2008.

[2] For example in Dr. Herrera's list of medical records that he has reviewed there is no mention of any head trauma or brain injury. Specifically, there is no mention of head trauma in the records of Broward County General Medical Center, the first medical provider to treat Plaintiff following the accident, or those of his other treating doctors in chronological order: Dr. James Jeffers (July-October 2004); Dr. Keith Cummings (August-December 2004), or Dr. Louis Eastlick (December 2004-May 2005), Dr. James Jordan (December 2005). In particular, Dr. Jeffers was deposed on September 13th, 2009 and testified that the Plaintiff did not tell him about having struck his head or having suffered any head trauma as a result of the accident and if he had it would have been noted in his medical record. Moreover, Dr. Jordan a psychiatrist examined the Plaintiff on December 1, 2005 and specifically asked the Plaintiff whether he had suffered any head trauma, confusion, memory problems, neurologic disorders, depression, or anxiety and to each the Plaintiff responded that he had not. (See Dr. Jordan's records copies of which are attached as Exhibit "B "). Plaintiff did state that he experienced an "unusual mental experience"following his motorcycle accident in 1982 where he reported that "was completely dead, dead, dead." See exhibit "B"). Further, in the Findings of Fact made by the District Director of the U.S. Department of Labor in December of 2006 no mention is made of any head trauma or brain injury. In fact, in the Stipulation of Settlement reached between the Plaintiff and his Longshore Harbor and Worker's Compensation carrier the Plaintiff admitted that the only injuries he suffered resulting from the accident of July 23, 2004 was a fracture right wrist. (See Exhibit "C").

Also, Mr. Herrera is not an accident reconstructionist nor is he a neurologist and therefore he lacks adequate knowledge about the issue of whether Plaintiff suffered traumatic brain injury or whether his head struck the deck of the ship. *See e.g.* Chikovsky v. Ortho Pharmaceutical Corp., 832 F.Supp. 341, 344-46 (S.D. Fla. 1993)(testimony of the plaintiff's sole expert that the defendant's product caused birth defects was inadmissible, noting that the expert, an obstetrician-gynecologist, had no specialized training in embryology or teratology.). In addition, Herrera states on page 5 of his report that Plaintiff's IQ value "places him within the mentally defective range of intellectual functioning," and that "[h]ad this been Mr. Calderon's pre-morbid level of functioning, prior to the 2004 accident, it would have been extremely unlikely that he would be able to hold his job as a longshoreman and perform within reasonable employer's expectations." Mr. Herrera is not a vocational rehabilitation expert nor does he hold qualifications in that field and therefore he is not qualified to opine on the requisite level of intelligence for Plaintiff to perform his job as a longshoreman.

Herrera's conclusions are also unreliable because he has also failed to rule out alternative causes of Plaintiff's alleged neurological or psychological symptoms. Herrera notes on page 3 of his report that Plaintiff has suffered "two additional major accidents" prior to the accident in question, including a motorcycle accident. However, nowhere in his report does Dr. Herrera address whether these other accidents could have caused Plaintiff's alleged symptoms or whether there could be potential other causes.[3] Because Mr. Herrera has failed to employ an adequate differential diagnosis,

---

[3]Herrera is apparently ignoring the records of Dr. Jordan dated December 7, 2005 where Plaintiff reported that following his motorcycle accident in 1982 he stated, "I was completely dead, dead, dead" and that his family came to pick up his body but he survived. Plaintiff also

his opinion as to the cause of Plaintiff's alleged neurological and psychological problems should be excluded under Federal Rule of Evidence 702. *See* In re Paoli, *supra*, at 759.

Herrera also states in his report that his conclusion that Plaintiff struck his head on the deck of the ship is based on Plaintiff's reporting that "a witness to the fall has stated that he hit his head." Herrera Report, p. 1. This witness has not been identified nor has any statement been identified or produced.

**DR. NICHOLAS SUITE**

Dr. Nicholas Suite, the neurologist designated by the Plaintiff as his expert, relies upon the opinions of Dr. Herrera that the Plaintiff had "sustained a head injury in the fall" in support of his own conclusion. See Suite Report, p. 2 attached as exhibit "D". As set forth above, Mr. Herrera's opinion in this regard is purely speculative and unsupported by any medical records or published studies, but rather is based on Herrera's own subjective opinion. Accordingly, Dr. Suite's conclusion that Plaintiff suffered traumatic brain injury are also speculative and inadmissible. *See* Viterbo, *supra*, 826 F.2d at 424. The cardinal rule violated by both Drs. Herrera and Suite is that an expert's opinion must be based on facts in evidence. It cannot be based on evidence that is not in the record. Here, we not only have Drs. Herrera and Suite ignoring the undisputed evidence that the Plaintiff did not suffer any head trauma or strike his head as a result of the incident, but also the admissions of the Plaintiff that the only injury suffered was a fractured right wrist as he represented to the District

---

stated that following his motorcycle accident the first thing he became aware of was being called "Michelangelo" and heard a voice say that "God is going to use you."See exhibit "B".

Director of the U.S. Department of Labor and to which he also represented was not made under any duress.[4]

Like Herrera, Dr. Suite also notes Plaintiff's prior history of injuries. On page 2 of his report he states, that Plaintiff "has a history of a motorcycle accident more than 25 years ago, which did not leave him with any lasting complications or problems." Also like Herrera, Dr. Suite ignores this accident and does not address whether this accident or other factors could have caused the alleged psychological problems of CALDERON. Accordingly, Suite also has not provided an adequate differential diagnosis as required by In re Paoli and his opinions are therefore inadmissible.[5] *See* 35 F.3d at 759.

**CRAIG LICHTBLAU**

Dr. Lichtblau is the Plaintiff's vocational rehabilitation expert and he has prepared a "Continuation of Care" plan for Plaintiff's alleged future medical expenses. However any of Dr. Lichtblau's opinions which are based on the assumption that Plaintiff suffered a head injury should be excluded because, as with the opinions of Dr. Suite and Herrera, such opinions are purely speculative and not based on Plaintiff's medical history or supported by scientific evidence. In Dr. Lichtblau's section entitled "Comprehensive Medical Evaluation" he states only that Plaintiff reported that witnesses said he hit his head[6] and that Plaintiff reported seeing colors after his fall. See

---

[4] If the Plaintiff is going to argue that his representations to the District Director were untrue then he either has to reopen his Longshore and Harbor Workers Compensation Act ("LHWCA") proceedings or accept the fact that his representations to this Court through his expert witnesses are untrue and should be disregarded.

[5]See note 3, *supra*.

[6]This witness has not been identified nor has any statement been identified or produced.

Lichtblau Comprehensive Medical Evaluation, p. 1 attached as exhibit "E". Apparently these statements by Plaintiff were all that was relied upon by Dr. Lichtblau in reaching his conclusion that plaintiff suffered a "traumatic brain injury with cognitive deficits, secondary to injuries sustained in the work related accident on 7/23/04." See Comprehensive Medical Evaluation, p. 29. Dr. Lichtblau cites no supporting evidence for this conclusion, nor does he compare the Plaintiff's symptoms and medical history with a known scientific conclusion or relationship. To the extent that this conclusion is based on the opinions of Dr. Herrera or Suite, it is patently unreliable as set forth above. In particular, Dr. Lichtblau's "Continuation of Care" plan includes future medical expenses related to Plaintiff's alleged psychological and cognitive problems . Continuation of Care, exhibit "E". Any costs which are based on Herrera's opinions or prepared by Herrera himself should be excluded because they are based on Herrera's speculative and unreliable conclusion that Plaintiff suffered head trauma.

**B. PLAINTIFF'S MARITIME EXPERT IS UNQUALIFIED TO TESTIFY AS TO THE ERGONOMICS OF LASHING OPERATIONS AND HIS OPINIONS ARE NOT HELPFUL BECAUSE THEY ARE BASED ON COMMON KNOWLEDGE**

Plaintiff's expert Bryan Emond is a mechanical engineer. He has advanced opinions as to the design of the hatch cover and ergonomics of the proper method of loosening the turnbuckle. He has also rendered opinions on what the duties of the crew were during lashing operations and that the crew had the opportunity to intervene. Emond's opinions should be excluded because: 1) he is not qualified to render an opinion on ergonomics/human factors because he is not a trained ergonomist or human factors engineer; and 2) his opinions do not assist the trier of fact to understand the

evidence or to determine a fact in issue because his proffered expert testimony is based upon common knowledge within the purview of the trier of fact.

As a threshold matter, the design of the hatch cover and the ergonomics associated with it are clearly theories that encompass the seaworthiness of the vessel. Unseaworthiness is irrelevant as a shipowner owes no warranty of seaworthiness to a longshoremen. *See* Anastasiou v. M/T World Trust, 338 F.Supp.2d 406, 418 (S.D.N.Y. 2004). Further, Mr. Emond has included in his expert report a section entitled "Human Factors Design Considerations" wherein he renders opinions regarding whether the hatch cover was a proper working surface, whether the lashing platform was an adequate working surface and the ergonomics of performing lashing operations from both the hatch cover and lashing platform. See Emond Report attached as exhibit "F". These are matters clearly outside of Mr. Emond's area of expertise as he is not an ergonomist or a human factors engineer, but rather a mechanical engineer. Therefore Emond's opinions regarding ergonomics and human factors will not assist the trier of fact and should be excluded. *See* Stull v. Fuqua Industries, Inc., 906 F.2d 1271, 1275 (8th Cir. 1990)(mechanical engineer was found not qualified to state that the plaintiff's leg would have broken had the accident occurred in the manner claimed by plaintiff, since the expert lacked expertise in human anatomy.).

The fact that Mr. Emond is a mechanical engineer and named as Plaintiff's maritime expert does not make him qualified to opine on the ergonomics of lashing operations. Federal courts have disallowed experts arguably qualified in one field to opine in another field, no matter how closely related. *See e.g.*, Wilson v. City of Chicago, 6 F.3d 1233 (7th Cir. 1993) (pathologist not qualified to give opinion regarding the effects of electroshock treatment as he is neither a neurologist, a

psychiatrist or a physiologist); Huey v. United Parcel Service, 165 F.3d 1084 (7th Cir. 1999) (vocational expert with a Ph.D. in human resource development was not qualified to opine as to whether a terminated employee was the subject of racial discrimination). This has been the case even where the expert generates data on which a professional in another field relies to reach his opinion. *See* EEOC v. Rockwell International Corp., 243 F.3d 1012 (7th Cir. 2001) (ergonomist's evaluation of the risks of musculo-skeletal disorders associated with repetition and duration of upper extremity movements in the relevant job market did not constitute a vocational opinion, despite the fact that a vocational expert could rely on such data in reaching his conclusions.).

With respect to putting himself in the mind of the crew and stating that the crew had a duty to intervene, an expert is prohibited from speculating as to what a person should have observed as that is the province of the jury and even more glaring is that an expert cannot render opinions on conclusions of law, here, the duty to intervene. Because Rule 702 requires that expert testimony assist the trier of fact to understand the evidence or to determine a fact in issue, such testimony should be excluded if based upon common sense. *See* Getter v. Wal-Mart Stores, Inc., 66 F.3d 1119, 1124 (10th Cir. 1995), *cert. denied* 516 U.S. 1146 (in slip and fall case, trial court properly excluded proffered expert testimony because the "normal life experiences and qualifications of the jury would permit it to draw its own conclusions concerning the safety of the floor, based upon lay testimony of the eyewitnesses").

In Torres v. Johnson Lines, 932 F.2d 748 (9th Cir. 1991), the trial court excluded the testimony of a marine safety expert retained by a longshoreman injured while off-loading a vessel. The appellate court affirmed the trial court's decision, explaining that the plaintiff failed to indicate any

specific evidence that was so technical or complex that a jury could not have grasped it without the aid of experts. *Id.* at 751. The court went on to state that the jury was capable of using common sense to evaluate, without the help of experts, whether the accident was caused by negligence of the stevedore, or the ship, or the plaintiff himself. *Id.*; *see also* Jenkins v. Arkansas Power & Light Co., 140 F.3d 1161 (8th Cir. 1998)(Plaintiff sued for injuries when he dove into reservoir and hit unmarked submerged island. Trial court properly excluded expert testimony on reservoir management as it relates to the safety of recreational users because it was within the common knowledge of the jury). Similarly, in Hopper v. Waterman S.S. Co., 1992 AMC 1442 (E.D. La. 1991), the widow of a captain who died of a heart attack aboard a ship offered the testimony of a marine safety expert that ocean-going vessels should have medical oxygen aboard. The expert concluded that if the defendant had stored medical oxygen aboard his ship, then the captain's death may have been prevented. The defendant offered its own expert testimony that it had no duty or obligation to store medical oxygen aboard ship. The court excluded the testimony of both experts, explaining that their opinions on the duty of a vessel owner to carry oxygen was within the province of the jury. *Id.* at 1443.

Here, Mr. Emond has stated the following opinions: 1) "Mr. Calderon unintentionally fell off the unprotected edge of the cargo hatch." Emond Report, p. 30; 2) "The place on the cargo hatch where Mr. Calderon was standing was not a proper working surface." Emond Report, p. 30; 3) "The lashing platform that is adjacent to the cargo hatch does not provide an adequate working area for container lashing operations." Emond Report, p. 30; 4) "The ledge created by the hatch coaming lessens the perception of a fall hazard for some perspectives." Emond Report, p. 30; 5) "When

walking forward, across the cargo hatch, and traversing across the front of a container, the presence of a fall hazard is less apparent." Emond Report, p. 30; 6) "The railing on the lashing platform should have been in place and Mr. Calderon should have been advised to work from the platform."[7] Emond Report, p. 30; 7) "The ship's crew knew of the potential hazards of working while standing on the cargo hatch." Emond Report, p. 31; 8) "The ship's crew had an opportunity and duty to warn Mr. Calderon regarding this hazard, but failed to do so."Emond Report, p. 31; 9) "Based upon Captain Niewidok's testimony, the ship has not established a safe method of lashing the containers at the outboard corner of the forward end of the number one cargo hatch."See supplemental Emond Report, p. 1 attached as exhibit "G"; 10) "Lashing at this location should take place from the lashing platform, however, doing so is difficult and awkward."See supplemental Emond Report, p. 2; 11) "Without a railing in place, working at this location exposes the longshoreman to a fall hazard."See supplemental Emond Report, p. 2; 12) "The crew has a duty to notify longshoreman of any dangerous condition, including the hazards of working at this location."See supplemental Emond Report, p. 2.

---

[7]Any opinions regarding the Plaintiff lashing from the lashing platform and whether the stanchions and safety lines should have been in place should be excluded as they are speculative and irrelevant. Plaintiff clearly testified that he was not standing on the lashing platform at the time of his accident (Calderon dep. at pp. 96-98) and that he did not consider loosening the turnbuckle from the lashing platform which he could have stood on to do so. (Calderon dep. pp. 129-300). In Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69 (3rd Cir. 1996) a cruise ship passenger was injured when she slipped in a tub. The plaintiff's expert testified that if there had been more non-skid stripping in the tub, it would have been more likely that the plaintiff would not have fallen. He went on to conclude that the absence of strips caused the plaintiff to fall. Because the expert's opinion was based upon pure speculation, the appellate court held that it should have been excluded. *Id.* at 75.

All of the above opinions are based upon common knowledge within the purview of the trier of fact and therefore should be excluded. *See* Getter, *supra*, at 1124; *see also*, Peters v. Five Star Marine Service, 898 F.2d 448, 449 (5th Cir. 1990)(Trial court precluded the plaintiff's marine operations expert from testifying as to the hazards of offloading a vessel in seas of over five feet, and the responsibility of the master and crew of a vessel to end offloading procedures when dangerous conditions exist. Specifically, the court explained that the subject matter which the expert was going to discuss and the opinions he was going to express were matters which the jury could competently deal with based on common sense.). Further, an expert's report setting forth legal conclusions cannot be treated as factual support for a party's position and therefore Emond's opinions related to the legal duties of the crew are inadmissible. The Lovable Co. v. Honeywell, Inc., 431 F.2d 668, 674 (5th Cir. 1970) cited with authority in Griffin v. City of Clanton, Ala., 932 F.Supp. 1357, 1358-59 (M.D. Ala. 1996).

WHEREFORE Defendant REEDEREI CLAUS-PETER OFFEN GmbH & CO. respectfully requests that the Court: 1) exclude the reports and testimony of Plaintiff's experts Herrera, Suite and Lichtblau related to or based on the opinion that Plaintiff suffered any alleged traumatic brain injury; and 2) exclude the report of Brian Emond in its entirety and preclude his testimony as to the topics addressed in his report, and all other relief the Court deems just and equitable.

s/Jan M. Kuylenstierna
Jan M. Kuylenstierna
Fla. Bar No. 375985
Email: jkuylenstierna@fowler-white.com

s/Charles G. De Leo
Charles G. De Leo

Fla. Bar No. 353485
Email: cdeleo@fowler-white.com

s/Damon T. Hartley
Damon T. Hartley
Fla. Bar No. 0041136
Email: dhartley@fowler-white.com

FOWLER WHITE BURNETT P.A.
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, Florida 33131-3302
Telephone: (305) 789-9200
Facsimile: (305) 789-9201
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2009, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Damon T. Hartley
Damon T. Hartley

**SERVICE LIST**
CALDERON V. REEDEREI CLAUS-PETER OFFEN
CASE NO. 07-61022 CIV COHN/SELTZER

**Mr. David W. Brill**
DOWNS BRILL WHITEHEAD
One S.W. 129th Avenue, Suite 305
Pembroke Pines, FL 33027
Email:dbrill@dbwlaw.com
Telephone: (954) 447-3556
Facsimile: (954) 447-3557

Attorney for CALDERON
Service via transmission of Notices of Electronic Filing generated by CM/ECF

**Steven F. Grover, Esq.**
Law Office of Steven F. Grover
One East Broward Blvd.
Suite 700
Fort Lauderdale, FL 33301
Email:lawhelp@earthlink.net
Telephone: (954) 356-0005
Facsimile: (954) 356-0010

Attorney for CALDERON
Service via transmission of Notices of Electronic Filing generated by CM/ECF