UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61022-CIV-COHN

MIGUEL CALDERON,

Magistrate Judge Seltzer

    Plaintiff,

vs.

REEDEREI CLAUS-PETER OFFEN and
ABC Manning Company,

    Defendants.
_____/

## OMNIBUS ORDER AND ORDER RE MOTION FOR SUMMARY JUDGMENT

    THIS CAUSE is before the Court upon the Defendant's Motion for Summary Judgment [DE 96], Plaintiff's Motion to Strike Reply [DE 122], Plaintiff's Motion to Forgive Lack of Compliance with Local Rule, or in the Alternative, to Permit Plaintiff to Correct Statement of Facts [DE 124], Plaintiff's Withdrawal of Demand for Jury Trial [DE 129], and Defendant's Motion to Strike Reply in Support of Motion to Forgive Lack of Compliance, or, in the alternative, Motion for Leave to File Surreply [DE 169]. The Court has carefully considered the motions, responses and replies, and is otherwise fully advised in the premises.

### I. BACKGROUND

    Plaintiff Miguel Calderon ("Plaintiff" or "Calderon") brings this personal injury action against Defendant Reederei Claus-Peter Offen GmbH & Co. ("Defendant" or "Reederei") for injuries he alleges to have suffered as a result of an accident which occurred on board the container vessel M/V "San Felipe." This accident occurred on July 23, 2004 while the vessel was being unloaded at Port Everglades, Florida, within

the navigable water of the United States.  Plaintiff was employed at the time of the accident as a longshoreman by South Stevedoring and was engaged in cargo operations on board the vessel.

During cargo operations aboard the San Felipe at the time of the accident, Plaintiff had just arrived and was standing atop the hatch cover attempting to loosen a turnbuckle with a lashing rod.   The turnbuckle is part of the mechanism which keeps the containers stable aboard a container ship.  A stevedore is not supposed to stand on the closed hatch cover on the San Felipe when engaged in lashing operations.  Instead, there is a lashing platform designed for this purpose.  The hatch cover on the San Felipe has a design in which it narrows at a certain point and the distance which one would fall is masked by the hatch coaming.  Plaintiff fell when he took a step back to better position himself to move the turnbuckle with a lashing rod.  Plaintiff fell on his arm and his side, suffering certain injuries, the extent of which the parties dispute.

Defendant is the manager and operator of the vessel in question.   Defendant's safety policies state that the ship's officers should supervise the lashing and unlashing of cargo.  At the time of the accident, Defendant had one crew member assigned to each bay to observe the unloading process.  Seaman Arias was observing the bay where the accident occurred and saw Plaintiff standing atop the hatch cover.  He reported this fact to the officer in charge at that time as seaman do not talk directly to longshoreman while the latter is working.

Plaintiff alleges that Defendant breached certain duties owed by a ship owner to a longshoreman, while Defendant denies such a breach.  Plaintiff's Amended

Complaint contains one claim for vessel negligence under Section 905(b) of the Longshore and Harbor Workers Compensation Act ("LHWCA"). The Court has jurisdiction pursuant to its admiralty jurisdiction and federal question under the LHWCA.

## II.  DISCUSSION

### A.  Summary Judgment

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).

### B.  Duties of Shipowner to Longshoreman under LHWCA

The United States Supreme Court has explained that a shipowner has three general duties to a longshoreman or stevedore unloading cargo from a vessel.  These duties (sometimes referred to as the "Scindia" duties) are:

> The first [duty], which courts have come to call the "turnover duty," relates to the condition of the ship upon the commencement of stevedoring operations. The second duty, applicable once stevedoring operations have begun, provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the "active control of the vessel." The third duty, called the "duty to intervene," concerns the vessel's obligations with regard to cargo operations in areas under the principal control of the independent stevedore.

Howlett v. Birkdale Shipping Co., S.A.,  512 U.S. 92, 98 (1994) (internal citations omitted); Scindia Steam Nav. Co. v. De los Santos, 451 U.S. 156, 167-178 (1981).

The Supreme Court has also explained the purpose of the 1972 Amendments to the LHWCA as shifting the burden of compensating injured longshoreman to their

employers, the stevedoring companies.  Howlett, 512 U.S. at 97; Lampkin v. Athene Transport Co., Ltd., 823 F.2d 1497, 1501-02 (11th Cir. 1987).  The longshoreman now has a strict liability workers compensation claim against his employer, while also retaining an additional right to bring a negligence action against the shipowner.  Howlett, 512 U.S. at 97.  However, the right to bring a claim for unseaworthiness was abolished, and "[s]ubjecting vessels to suit for injuries that could be anticipated and prevented by a competent stevedore would threaten to upset the balance Congress was careful to strike in enacting the 1972 amendments."  Id.

In this case, Plaintiff's memorandum in opposition to Defendant's motion for summary judgment discusses all three duties, even breaking out the duties to assert that there are six duties.  The implication in Plaintiff's opposition is that all of the Scindia duties were breached by Defendant.  Therefore the Court will discuss each of the three duties in turn.

### 1.  Turnover Duty

The first duty of a shipowner to a longshoreman concerns the period just prior to the onset of cargo operations, in that the vessel and its equipment must be in reasonably safe condition and stevedores must be warned of hidden dangers.  Lampkin, 823 F.2d at 1501.  The critical question in this case is whether the lack of sufficient standing space to perform lashing operations on the hatch cover is a hazard known to the vessel and not obvious to the reasonably competent stevedore.  Plaintiff presents evidence from the deposition testimony of the captain of the vessel, Stefan Niewidok, that he knew that the design of the ship made it difficult to lash one of the

5

container positions from the lashing platform, and that often workers, whether stevedores or crew, would sometimes stand on the hatch cover to lash or unlash that container. Deposition of Stefan Niewidok at pp. 57-62, Exhibit C to Plaintiff's Memorandum in Opposition to Motion for Summary Judgment [sealed at DE 108]. However, Captain Niewidok also stated that longshoremen can refuse to lash the container if they believe it is too dangerous, something that has happened (though it happened after the incident in question). Id. at 57.

While it is clear that the ship knew of the design of the ship regarding the positions of the hatch cover and lashing platform, it is a question of fact whether standing on the hatch cover while performing lashing operations is an obvious hazard to the reasonably competent stevedore. Applying the relevant standards under Scindia and Howlett, the Court recognizes that to impose liability upon a ship owner, Plaintiff cannot just assert that the ship has a design flaw that the crew knew about. However, in reviewing the deposition testimony in this case, the Court finds that there is a disputed issue of fact regarding whether a reasonably competent stevedore would know of this danger, and, therefore, an unresolved question of whether Defendant breached its duty to warn Plaintiff of this danger.[1]

### 2. Active Control or Involvement of Vessel

The second duty that a vessel owes to a longshoreman concerns the situation

---

[1] The Court does agree with Defendant that conclusory statements of Plaintiff's expert Bryan Emond cannot create a disputed issue of fact. See Exhibit A to Plaintiff's Opposition. The Court did not rely upon Emond's report in reaching this conclusion.

during cargo operations in which the shipowner is actively involved itself in the cargo operations and fails to exercise due care or warn the longshoreman of areas or equipment under the active control of the vessel during stevedoring operations. Lampkin, 823 F.2d at 1501, quoting Scindia, 451 U.S. at 168.  Defendant asserts that it had no active involvement in cargo operations and that Plaintiff was following the orders of his stevedoring company.  Plaintiff argues that the ship's crew was "actively supervising loading and unloading operations" and were required to do so by the ship's charter, the Defendant's safety manual, international shipping protocols ("ISM Code").

  Upon the undisputed facts in the record, the Court concludes that there is not more than a scintilla of evidence to support Plaintiff's argument that the ship's crew in fact was actively involved in cargo operations on the day of the accident.  Plaintiff testified that he was directed to loosen the turnbuckles of the container based upon orders from a Mrs. Joyce, who in turn had received orders that he overheard from the gantry crane operator, an employee of the stevedoring company.  Deposition of Miguel Calderon at pp. 88-91, Exhibit B to Plaintiff's Memorandum.  Captain Niewidok acknowledged in his deposition that his officers do supervise cargo operations, but the context of his answers also make clear that the officers and crew merely observe the cargo operations and are not "actively involved."  Niewidok deposition at pp. 113 to 122. The testimony of Ordinary Seamen Felizardo Arias, the crewman who witnessed the accident and was responsible for checking that the containers are stowed in an acceptable way, confirms that the crew was not actively involved in cargo operations. Deposition of Felizardo Arias, Exhibit D to Plaintiff's Opposition at pp. 52, 120, 162-63,

268-69.

The distinction between "checking" on stevedores and having overall supervision as compared with active involvement or control of cargo operations must be made within the context of the LHWCA and the judicial decisions listed above interpreting the 1972 Amendments.  There is no evidence here that the crew or officers of the San Felipe instructed Plaintiff or the stevedores how to perform cargo operations, nor did they participate in the cargo operations.  Rather, they retained the ability to correct mistakes in lashing, since containers not fully secured will come loose during transit.  If on the record in this case, the Court were to conclude that Defendant had active involvement (or that there was a genuine issue of material fact on this issue), then injured stevedores would be entitled to a negligence trial in every instance, as no shipowner or crew could ever completely disengage from some oversight of cargo operations.

Turning next to Plaintiff's argument that the ship's charter and safety manual act as a contract provision, positive law or custom under Scindia to form a duty to supervise the stevedores or prove that Defendant was actively involved in cargo operations, the Court again concludes that the general language of the charter, the ISM Code and the Defendant's corporate safety manual do not change the general duty standard.  With regard to the charter, its standard language is similar to that discussed in Spence v. Mariehamns R/S, 766 F.2d 1504, 1507 (11th Cir. 1985), wherein the Eleventh Circuit concluded that the charter language merely gave the captain a right to "veto" a cargo plan that would imperil the seaworthiness of the vessel, but not to

8

impose upon the ship a duty to supervise the cargo's stow.  Nichimen Co., Inc. v. M.V. Farland, 462 F.2d 319, 332 (2nd Cir. 1972).   As for the ship's safety manual and the Defendant's corporate safety policies, now required by the United States' adoption of the International Safety Management Code, this Court agrees with another District Court that Congress merely desired to participate with other maritime nations in achieving safety goals, but did not intend to change long-established rules of law which govern liability and its allocation in general maritime law.  Johnson v. Horizon Lines, LLC, 520 F.Supp.2d 524, 533 (S.D.N.Y. 2007) (decision involved Jones Act, but same reasoning would apply to LHWCA claims).

This Court therefore concludes that Plaintiff has failed to create a genuine issue of material fact that Defendant breached its duty to exercise reasonable care to prevent injuries to longshoremen in areas that remain under the active control of the vessel. Plaintiff was operating in cargo operations that were not under active control of the vessel but rather under control of his employer, the stevedoring company.

### 3. Duty to Intervene

Defendant also seeks summary judgment to the extent Plaintiff's negligence claim invokes the duty of a shipowner to intervene when it has actual knowledge of a dangerous condition and actual knowledge that the stevedore has failed to remedy it. Pimental v. LTD Canadian Pacific Bul, 965 F.2d 13, 17 (5th Cir. 1992), citing Scindia, 451 U.S. at 175-76.  Plaintiff asserts, similar to the discussion above with regard to turnover duty, that the captain, officers and even ordinary seaman Arias knew that the

9

standing room on the hatch cover was too narrow for a stevedore to be able to sufficiently tighten or loosen the turnbuckle, creating a risk of falling down to the main deck. Plaintiff's testimony indicates that he was not standing on the hatch cover for very long before being asked (by an employee of the stevedoring company) to loosen a turnbuckle on a nearby container. Seaman Arias testified that he saw that Plaintiff was attempting to perform lashing operations from the hatch cover. Arias deposition at pp. 60-61.

Defendant argues that the shipowner's awareness of a condition, the narrowing of hatch cover, does not equate with knowledge that the condition is dangerous. The Court agrees. However, there is sufficient evidence in the record to create a genuine issue of disputed fact as to Defendant's knowledge of the dangerousness of the hatch cover as a location from which to perform lashing operations, given that a lashing platform was provided for that purpose. There are also disputed issues of fact as to whether the Defendant, through Seaman Arias and the watch officer, had actual knowledge that Plaintiff was about to attempt lashing operations from the hatch cover and whether Defendant's crew had time to warn him of any danger. Thus, summary judgment on this part of the claim is not appropriate.

### C.  Procedural Motions

Plaintiff has moved to strike portions of Defendant's reply memorandum that argue the non-existence of certain damages, an issue not argued by Defendant in its initial motion for summary judgment. The Court agrees that the issue of the extent of damages cannot be determined on this record at summary judgment. The existence of

statements in the record of the prior longshoreman's compensation award goes to the weight of Plaintiff's evidence as to damages, and would not be decided upon summary judgment, even if the Court considered the arguments. The Court will grant this motion to strike.

Plaintiff moved for leave to correct his statement of facts to comply with the Local Rules. Plaintiff's initial Statement of Genuine Issues of Material Fact consisted of a simply list of 19 questions [DE 109], rather than following the format in Local Rule 7.5.C requiring the party opposing summary judgment to correspond with the order and paragraph numbering scheme of the movant's statement. In this case, Plaintiff attempted to correct this failure by submitting a properly numbered response that purportedly did not raise any issue not raised in the Plaintiff's opposition memorandum.[2] Defendant opposes the motion because the time is too close to trial to force Defendant to reply to a new statement. The Court concludes that it will grant the motion rather than allow the harsh result of Plaintiff's entire opposition papers to be stricken. The amended statement of facts did not contain any assertion relied upon by the Court that was not presented within Plaintiff's memorandum in opposition.

Finally, the Court will grant Defendant's motion to strike Plaintiff's reply in support of its motion for leave to file a corrected statement of facts. The Court did not consider the reply [DE 156].

---

[2] The Court notes that Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment contained long sections discussing the disputed facts with record citations to depositions.

III.  CONCLUSION

Summarizing the Court's ruling on Defendant's Motion for Summary Judgment, the Court denies the motion with regard to the alleged breach by Defendant of its turnover duty and its duty to intervene.  The Court granted the motion as to breach of Defendant's duty to exercise reasonable care to prevent injuries to longshoremen in areas that remain under the "active control of the vessel" because Plaintiff was not working in such an area.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment [DE 96] ] is hereby **GRANTED in part** and **DENIED in part**.  Plaintiff's claim of negligence is limited to the theories of a breach of the turnover duty and the duty to intervene;

2. Plaintiff's Motion to Strike Reply [DE 122] is hereby **DENIED**;

3. Plaintiff's Motion to Forgive Lack of Compliance with Local Rule is hereby **GRANTED** [DE 124], though the alternative relief to Permit Plaintiff to Correct Statement of Facts is hereby **DENIED**;

4. Plaintiff's Withdrawal of Demand for Jury Trial [DE 129] is hereby **GRANTED**. The Court will conduct a bench trial in this case;

5. Defendant's Motion to Strike Reply in Support of Motion to Forgive Lack of Compliance [DE 169] is hereby **GRANTED**, to the extent Plaintiff is arguing the merits of the motion for summary judgment;

6. The Court will hear the remaining motions [DE 130, 132, 133, 139, 150, 153 and 162] at Calendar Call;

7.  The parties are advised that this case is the only case set for trial commencing Monday, October 26, 2009, and the Court has set aside nearly the entire week to try this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 20th day of October, 2009.

JAMES I. COHN
United States District Judge

Copies furnished to:

counsel of record on CM/ECF